MARITIME MANUFACTURERS, INC., APPELLANT, *v.* HI-SKIPPER
MARINA ET AL., APPELLEES.

[Cite as Maritime Manufacturers, Inc. *v.* Hi-Skipper Marina (1985),
19 Ohio St. 3d 93.]

(No. 84-899—Decided August 9, 1985.)

*Avery & Hamad, Neil Hamad* and *Mark R. Wagner,* for appellant.

*Direnfeld, Greene & Blackburn Co., L.P.A.* and *Bernard B. Direnfeld,* for appellees.

*Per Curiam.* This appeal presents two issues for our determination: (1) whether the "where is as is" clause contained in the purchase contract for the forty-seven-foot boat effectively precludes any claim by Hi-Skipper for breach of implied warranty of merchantability; and (2) whether Hi-Skipper is similarly precluded from recovering for breach of implied warranty with regard to the two smaller boats by virtue of its not being the ultimate consumer. We find that Hi-Skipper is precluded from its claim as to the larger boat because of the "as is" clause, but is not precluded from its claims as to the smaller boats. We thus affirm in part and reverse in part.

R.C. 1302.29(C)(1) governs the legal ramifications of warranty-preclusion clauses such as the one found in this contract. This section states, in pertinent part:

"[U]nless the circumstances indicate otherwise all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *."

Thus, a clause such as "where is as is" would normally preclude any claim of implied warranty breach "unless the circumstances indicate otherwise." One example of circumstances which "indicate[s] otherwise" would be when the parties understand the term to mean something *other* than a warranty waiver. There was conflicting testimony in this case as to what the term "where is as is" was intended to mean; however, such questions of fact are for determination by the trial court and must be upheld absent an attitude that is unreasonable, arbitrary and unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219. The appellate court's unsupported independent determination that "the manufacturer [*sic*] of a boat made to order cannot be sold with an exclusion of all implied or express warranties by simply inserting a 'where is, as is' clause" is without legal basis in derogation of ·the express dictates of R.C. 1302.29(C)(1).

We therefore find that the "where is as is" clause contained in the purchase order form for the forty-seven-foot boat did preclude a claim

based on implied warranty. By the exercise of reasonable care appellees, based upon being warned of the condition of the boat by the "where is as is" language, should have discovered the defects in the construction of the boat.

Turning to the second issue, R.C. 1302.27[1] sets forth the requirements for merchantable goods. A warranty of merchantability is implied in every sale of consumer goods by a seller who is a merchant with respect to those goods sold. It is significant to note that nowhere in this section, nor in any other section of the Revised Code or the Uniform Commercial Code, is there a statement to the effect that only the *ultimate consumer* may sue for breach of implied warranty of merchantability. Hi-Skipper may claim such a breach with regard to the two smaller boats even though it no longer owns the boats, so long as it can show that it suffered losses. See *Altec, Inc.* v. *FWD Corp.* (C.A.5, 1968), 399 F.2d 860.

Accordingly, we affirm in part and reverse in part the judgment of the court of appeals. The cause is remanded to the trial court for determination of losses incurred by Hi-Skipper as a result of the implied warranty breach regarding boat No. 31-011.[2] A determination is also to be made on remand as to the amount of losses, if any, incurred by Hi-Skipper with respect to the boat No. 31-010.

> *Judgment affirmed in part,*
> *reversed in part and cause remanded.*

CELEBREZZE, C.J., LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY, C. BROWN and DOUGLAS, JJ., concur in part and dissent in part.

---

[1] R.C. 1302.27 states:

"(A) Unless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

"(B) Goods to be merchantable must be at least such as:

"(1) pass without objection in the trade under the contract description; and

"(2) in the case of fungible goods are of fair average quality within the description; and

"(3) are fit for the ordinary purposes for which such goods are used; and

"(4) run, within the variations permitted by the agreement, of even kind, quality and quantity, within each unit and among all units involved; and

"(5) are adequately contained, packaged, and labeled as the agreement may require; and

"(6) conform to the promises or affirmations of fact made on the container or label if any.

"(C) Unless excluded or modified as provided in section 1302.29 of the Revised Code, other implied warranties may arise from course of dealing or usage of trade."

[2] Uncontroverted expert testimony at trial evidenced the unseaworthiness of boat No. 31-011, resulting in the implied-warranty breach.

SWEENEY, J., concurring in part and dissenting in part.

Because I believe that the legend "where is as is" has a peculiar definition within the boat manufacturing industry, and as such, does not function as a disclaimer of implied warranties under R.C. 1302.29(C), I must respectfully dissent to the majority's opinion with respect to the forty-seven-foot yacht.

R.C. 1302.29(C) provides in relevant part:

"Notwithstanding division (B) of this section:

"(1) *unless the circumstances indicate otherwise* all implied warranties are excluded by expressions like 'as is,' 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *." (Emphasis added.)

I submit that the circumstances in the cause *sub judice* do in fact indicate otherwise. The court of appeals below determined that the evidence before the trial court revealed that the scope of the purported "as is" exclusion was not clearly understood by the parties. Moreover, the record reflected a course of dealing between Maritime and Hi-Skipper in which the "where is as is" phrase meant that the boat needed additional cleaning or painting, and that such a phrase was not intended to exclude any implied warranties. This interpretation is buttressed by the testimony of Joseph Langlois, a naval architect-surveyor for over twelve years, and Eugene C. Kirby, the boat dealer-owner of Hi-Skipper, where both testified to the effect that trade usage and custom within the new boat industry defines the term "where is as is" to mean that the dealer will do minor cleaning to the boat being sold. In addition, the record indicates that the appellant at least tacitly agreed with the different meaning of "where is as is," given its performance of what can be construed as warranty work on the yacht in question after delivery. If appellant had intended "where is as is" to act as a disclaimer of warranties, why did it perform this work on the vessel in the first place? I do not believe that appellant should be able to seize upon the ordinary usage of "as is" and assert a disclaimer of warranties, where the circumstances indicate a specialized usage within the new-boat industry.

Given the different meaning attached to "where is as is" in the new-boat industry, I believe that it was incumbent upon the trial court to employ the provisions of R.C. 1301.11, and to render its decision in accordance with the trade usage and custom inherent in the industry, as well as the course of dealing established between the parties herein. Thus, I would affirm the court of appeals with respect to its recognition that a different interpretation applies to "where is as is" within the new-boat industry, and remand the cause to the trial court for further proceedings.

With respect to the remainder of the majority opinion, I concur wholeheartedly.

C. BROWN, J., concurs in the foregoing opinion.

DOUGLAS, J., concurring in part and dissenting in part. I respectfully concur in part and dissent in part. For the reasons that follow, I concur with the majority with regard to the sale and purchase of the forty-seven-foot boat but dissent from the majority opinion with regard to the two thirty-one-foot boats. I would reverse the court of appeals and reinstate in its entirety the well-reasoned judgment of the trial court.

This case was filed by appellant on June 30, 1978. Appellant sought to collect on a promissory note signed by the appellees. Subsequently, appellees filed an answer and counterclaim asserting that a certain forty-seven-foot boat sold by appellant to appellees was defective. The sale and purchase of these boats had been consummated in August 1977. After the pleading process between the parties had been completed and a motion for summary judgment made by appellant was denied by the trial court, the court scheduled a pretrial in December 1979. It was at this point, a year and one-half after the filing of the original complaint, that appellees amended their counterclaim and alleged defects in the two thirty-one-foot boats.

The matter came to trial, on April 26 and 27, 1980 before the court, appellees having waived a jury. The appellees stipulated that the amount due on the note in question was $50,000 with interest at nine percent. Appellant's claim having been stipulated, the case proceeded with appellees presenting evidence in an attempt to prove their counterclaim. The basis of appellees' counterclaim (Counts I and IV of the amended complaint) is that appellant breached alleged warranties given to appellees.

By this claim, and the arguments and citations given to this court by appellees as well as appellant, the case falls squarely under the Uniform Commercial Code and more specifically under the "Sales" article as adopted by Ohio in R.C. Chapter 1302. When Ohio became the tenth state to adopt the Uniform Commercial Code,[3] the adoption was hailed as a major accomplishment which resulted after years of study and effort by the bar and other interested persons in Ohio. As such, it is the law of this state and thus governs the commercial transactions between parties. I write now because I believe that the majority has not applied the law that I think is clearly pertinent and controlling in this case.

There can be no question that the boats in question herein are "goods" as defined in R.C. 1302.01(A)(8). As such, the transaction between the parties is one which is covered by R.C. Chapter 1302.

Next to be considered is R.C. 1302.04. From the record it is determined that the sale was one of $500 or more and that there is a "writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought * * *." Pursuant to R.C. 1302.14, then, it is the obligation of the seller to

---

[3] Am. S. B. No. 5 was passed by the 104th General Assembly. The Governor signed the bill on May 18, 1961 and the Uniform Commercial Code became the law of Ohio on July 1, 1962.

transfer and deliver the goods and that of the buyer to accept and pay in accordance with the contract. Here the goods were delivered by the appellant and accepted by appellees.

Acceptance of goods occurs when the buyer takes and retains the goods or when the buyer fails to make an effective rejection of the goods as provided in R.C. 1302.61(A). See R.C. 1302.64. In the case before us the boats were delivered by appellant, accepted by appellees and, more specifically, were not rejected by appellees as provided in R.C. 1302.61. In fact, appellees not only did not reject the goods, they accepted the goods, sold the two thirty-one-foot boats and still retain the forty-seven-foot boat.

Considering the foregoing, we must then look to R.C. 1302.65 which provides in subdivision (A) that a buyer must pay at the contract rate for any goods accepted. More importantly, in the case before us, R.C. 1302.65(C) provides that "[w]here a tender has been accepted: (1) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach *or be barred from any remedy.*" (Emphasis added.) In this case we have no notification by appellees to appellant of any breach until appellant sought to recover the amount still due on the contract. Even then the appellees did not claim in their original answer and counterclaim that there was any problem with the two thirty-one-foot boats. Appellees did not make any claim concerning these boats until nearly two and one-half years after the sale. Certainly under these circumstances, the operative language of R.C. 1302.65(C)(1) must come into play and appellees should be barred from "any remedy."

Since appellees did not reject the goods in conformance with the statute, the other option open to them under the code is that of revocation. When a buyer finds that goods are non-conforming and the non-conformance substantially impairs the value of the goods to the buyer, then the buyer may, pursuant to R.C. 1302.66, within a reasonable time after acceptance, revoke that acceptance and the buyer then has the same rights with regard to the goods as if the goods had been properly rejected. Here the appellees not only did not revoke their acceptance, they retained the goods, sold two of the boats and used and continued to hold for resale the forty-seven-foot boat. Even under these circumstances, appellees *might* have properly exercised their rights of revocation had they chosen to do so. See *McCullough* v. *Bill Swad Chrysler-Plymouth, Inc.* (1983), 5 Ohio St. 3d 181.

Accordingly, it is clear that the appellees have not exercised either option as provided to them by the law of sales.

Appellees argue, however, that the appellant has breached certain warranties given to appellees. The warranty sections of the code are R.C. 1302.25, 1302.26, 1302.27 and 1302.28. The mandated warranty in R.C. 1302.25 is a warranty of title. This section is clearly not applicable herein. *Express* warranties, by affirmation, promise, description or sample, are provided for in R.C. 1302.26. There is no evidence in the record nor do ap-

pellees contend in their argument and/or proposition of law before this court that appellant ever gave any express warranties with regard to these three boats.

This then leaves us with an implied warranty of merchantability pursuant to R.C. 1302.27 or an implied warranty that the goods were fit for a particular purpose pursuant to R.C. 1302.28. For goods to be "merchantable," they must satisfy the requirements of R.C. 1302.27(B). There is no showing in the record that these boats did not meet the required qualifications. Quite the contrary, the forty-seven-foot boat is still being held for sale by appellees (if it has not already been sold) at a price of $250,000 — $80,000 in excess of the purchase price to appellees, and the other two boats have already been sold by appellees to other purchasers. Clearly appellees cannot be heard to contend that any warranty of merchantability has been breached. Likewise, would the same be true for the same reasons of any warranty alleged under R.C. 1302.28? If appellees contend that the boats are (were) not fit for the particular purpose for which the goods were required, then appellees should not have sold the two smaller boats nor should they be holding out for sale the larger boat.

In addition to the foregoing, the record includes the purchase order and the invoice for the forty-seven-foot boat. Both documents are clearly marked "WHERE IS AS IS" in conspicuous (see R.C. 1301.01[J]) print. Such notation clearly meets the required standards of R.C. 1302.29(B) and (C)(1) for purposes of excluding *any* implied warranty with regard to the forty-seven-foot boat. Appellees argue, however, that there is a difference of interpretation in the boating business as to the meaning of such words when a boat is being sold and purchased. This contention is easily refuted when we note Official Comment No. 7 to R.C. 1302.29 which indicates that the term "as is" is understood to mean that the buyer takes the entire risk as to the quality of the goods involved.

Assume, however, for purposes of argument, that appellees' warranty allegations are correct. What remedies are available to appellees absent any rejection or revocation by them? A buyer's remedies under the code are found in R.C. 1302.85, 1302.87, 1302.88 and 1302.91. Appellees have cited us only to R.C. 1302.85 and appellant has not cited us to any section concerning a buyer's remedy for breach by a seller.

Appellees' reliance on R.C. 1302.85 for remedy is misplaced. In their brief appellees say "[t]here is no dispute that a buyer has a right of recovery for damages (due to the failure of the goods sold). R.C. 1302.85." This may be true if a buyer conforms his or her actions to the requirements of the code. Appellees have not done so. To avail themselves of the R.C. 1302.85 remedies, appellees must show that appellant failed to make delivery or has repudiated the contract, or that appellees rightfully rejected or justifiably revoked acceptance. Absent any of these conditions existing, R.C. 1302.85 does not apply. In the case before us we have seen that appellant (seller) has delivered, and appellees (buyers) have not re-

jected or revoked their acceptance. Therefore, R.C. 1302.85 relief is not available to appellees. Likewise, R.C. 1302.87 is not available for use by appellees as those conditions do not exist.

Appellees might have a stronger argument under R.C. 1302.88. However this section requires that a buyer give notification, within a reasonable time, of any breach and such notification must be given in conformance with R.C. 1302.65(C). Appellees have clearly not done so.

This leaves R.C. 1302.91 which provides for a deduction of damages resulting from any breach of the contract from any part of the price still due under the same contract. Even absent rejection or revocation by appellees, the trial court allowed a portion of appellees' counterclaim that the facts before the court supported. This was entirely proper as an amount was still due appellant under the contract. However, the trial judge, as the trier of fact, found that the other allegations of damage by appellees were not proven and in fact were refuted by the evidence. These findings should not be disturbed absent an abuse of discretion and there is certainly nothing in the record before us to indicate even a hint of abuse of discretion.

Some may find this a harsh result. However, the Uniform Commercial Code was promulgated and enacted by the legislature to be fair to sellers as well as buyers. Parties seeking to come under its umbrella must conform to its dictates. Appellees have failed to proceed in accordance with the law. In addition, they have failed to prove their case and, in fact, their very actions as to the two smaller boats and the documents in evidence as to the larger boat clearly dictate a judgment for appellant.

Accordingly, I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court. Hence, I concur in part and dissent in part.