BARKSDALE, Appellee,

v.

VAN'S AUTO SALES, INC., Appellant.

[Cite as *Barksdale v. Van's Auto Sales, Inc.* (1989), 62 Ohio App.3d 724.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 52595.

Decided May 8, 1989.

*Raymond Barksdale*, pro se.
*William L. Blake*, for appellant.

HANS R. VEIT, Judge.

This matter was initially before this court on January 26, 1987, at which time we affirmed the Cleveland Municipal Court's ruling. We held that we could not consider the merits of the appeal because the notice of appeal mistakenly specified that the appeal was taken from the order denying the motion for a new trial rather than from the final judgment on the merits. The Supreme Court in *Barksdale v. Van's Auto Sales, Inc.* (1988), 38 Ohio St.3d 127, 527 N.E.2d 284, reversed our judgment and held that any mistake in appealing from an order denying a motion for new trial rather than from the judgment should be treated as harmless error and that the appeal should be treated as if arising from the final judgment. The Supreme Court reversed our decision and remanded the cause to this tribunal for a consideration of defendant's appeal on the merits.

Plaintiff-appellee, Raymond Barksdale, purchased a 1975 Lincoln Mark VII automobile from defendant-appellant, Van's Auto Sales, Inc. The record indicates that the car had been sold to plaintiff with a signed "as is—no warranty" purchase waiver, and that the car had an odometer reading of over 113,000 miles. Before the purchase, plaintiff test drove the car and inspected it. Plaintiff specifically asked about the transmission and was told there was nothing wrong with it and that all he had to do was get the fluid and filter changed. Within two days of the purchase, the car broke down and was taken to a repair shop where a rebuilt transmission was installed at a price of $466.47.

On April 23, 1986, plaintiff commenced this action in the Cleveland Municipal Court, Small Claims Division, to compel the defendant to refund him the amount which it cost to repair the car's transmission. The court turned the matter over to a referee and a hearing was held.

On June 27, 1986, the referee rendered a report finding that although the car was sold "as is," there was an implied warranty of fitness of purpose which this car lacked, and that the "as is—no warranty" legend appearing on the vehicle would be voided as to the transmission only.

On July 3, 1986, the trial court entered judgment in favor of plaintiff in the amount recommended by the report of the referee.

On July 18, 1986, defendant filed objections to the referee's recommendations, and at that time, counsel for defendant allegedly discovered that the trial court had already entered judgment in the case on July 3, 1986. Therefore, on July 23, 1986, defendant filed a motion for judgment notwithstanding the verdict ("JNOV"), as well as a motion for a new trial.

Defendant claimed that the referee's findings were not mailed to it until July 10, 1986, and that it did not have the opportunity to object to the referee's report within the time period established in Civ.R. 53(E)(2).

On August 13, 1986, the trial judge filed an entry striking the motion for JNOV and denied the motion for a new trial. With respect to the defendant's objections to the report of the referee, the court stated, "[o]bjections are admitted but overruled."

The defendant assigns four errors for review.

### I

The first assignment of error reads:

"A sale of a motor vehicle under written contract providing 'as is—no warranty' means exactly that and a court cannot subsequently hold, in the absence of fraud, that the language is meaningless as to a portion of the vehicle which the buyer wishes to have warranted."

■ The defendant correctly argues that the referee erred in finding "that although the car was sold as is, there is an implied warranty of fitness of purpose which this car lacked and the 'as is—no warranty' will be voided as to the transmission only."

R.C. 1302.29(C)(1) governs the effects of warranty preclusion clauses such as the one presented in the present contract and states in part:

"Unless the circumstances indicate otherwise *all implied warranties are excluded by expressions like 'as is,'* 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." (Emphasis added.)

In *Maritime Manufacturers, Inc. v. Hi-Skipper Marine* (1985), 19 Ohio St.3d 93, 94, 19 OBR 255, 256, 483 N.E.2d 144, 146, the court held that "the 'where is as is' clause contained in the purchase order form for the forty-seven foot boat did preclude a claim based on implied warranty." The court explained that such a clause normally precludes any claim of implied warranty breach unless circumstances indicate otherwise. An example which the court stated would indicate otherwise would be when the parties understand the "as is" clause to mean something other than a warranty waiver.

In the present case, the record indicates that there was no dispute between the parties concerning the meaning of the warranty preclusion clause. Rather, the trial court, like the appellate court in *Maritime*, made an unsupported independent determination that the "as is" clause was inapplicable. The "as is" clause in this agreement did preclude a claim based on implied warranty.

■ However, the analysis does not end at this point. The next issue that must be addressed is whether an express oral warranty was given by defendant to plaintiff concerning the fitness of the transmission and, if so, was that express warranty effectively disclaimed in the subsequent contract. Express warranties are in addition to those implied by law and are not so easily withdrawn from the parties' agreement.

■ Whenever any affirmation of fact or promise relating to the goods becomes part of the basis for the bargain between parties, an express warranty is created by the seller. R.C. 1302.26(A)(1); UCC 2–313(1)(a).

The "basis of the bargain" test centers on the description or affirmation which goes to the heart of the basic assumption between the parties. The Official Comment to UCC 2–313 states: " * * * the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell * * *." UCC Section 2–313, Comment 4.

It is undisputed in this case that plaintiff specifically inquired into the state of the car's transmission. Defendant acknowledges that it told plaintiff there was nothing wrong with the transmission and that all he had to do was to get the fluid and filter changed. The salesman clearly went beyond "puffing" or "sales talk." Plaintiff was unequivocally told, following his specific inquiry, that the transmission was in good working order and that nothing was wrong with it. It is clear from the evidence that the seller's affirmations were part of the essence of the bargain. As such, these statements created an express warranty by the seller as to the condition of the transmission. Further, it is clear that the express oral warranty extended at least two days beyond the purchase of the vehicle.

■ The last issue is whether this express warranty was effectively disclaimed by the seller because of the "as is" clause in the sales agreement.

The Uniform Commercial Code provides that in situations where express warranties are made during the bargain, but then allegedly disclaimed in the actual sales contract, preference is to be given to the express warranties and inconsistent disclaimers are inoperative to the extent they are unreasonable. R.C. 1302.29(A). The Official Comment to the code states:

"This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude 'all warranties, express or implied.' *It*

*seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty* and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise." Official Comment to R.C. 1302.29. (Emphasis added.)

█ When a written contract for the sale of goods provides that the goods are sold "as is" and also disclaims all express and/or implied warranties and such provisions cannot be reasonably construed as consistent with the seller's oral express warranty, the express warranty will prevail and the inconsistent provisions deemed inoperative to the extent they are unreasonable.

In this case, the seller's express oral warranty is entirely inconsistent with the disclaimer in the sales contract. The express oral warranty, therefore, predominates as it would be unjust to allow the disclaimer to withdraw from the parties' agreement the prior affirmations made by the seller concerning the condition of the transmission.

Appellant's first assignment of error is overruled.

## II

The second and third assignments of error read:

"The provisions of Rule 53 of the Ohio Rules of Civil Procedure are mandatory, and a court may not 'rubber stamp' the referee's report, rendering judgment on July 3, 1986, when the referee has not in fact even mailed findings to the losing party until July 10, 1986.

"Rule 53(E) is not complied with where the court enters judgment on the referee's findings on July 3, 1986; the referee first mails a copy of said findings to the parties on July 10, 1986; losing party forthwith contacts his attorney who files objections to said findings on July 18, 1986; and at a subsequent date the court purports to consider and overrule said objections, leaving in full force and effect the court's judgment of July 3, 1986; and having deprived appellant of his right to appeal from said judgment by virtue of lapse of time."

█ Defendant's second and third assignments of error will be dealt with jointly as defendant essentially contends that the trial court failed to comply with the provisions of Civ.R. 53(E) by not affording it an opportunity to object to the referee's report filed on June 27, 1986. Civ.R. 53(E) provides in pertinent part:

"(1) Contents and Filing. The referee shall prepare a report upon the matters submitted by the order of reference. The referee shall file the report

with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried without a jury, the referee shall file with the report a transcript of the proceedings and of the evidence only if the court so directs.

"(2) Objections to Report. A party may, within fourteen days of the filing of the report, serve and file written objections to the referee's report. If objections are timely served and filed by any party, any other party may serve and file objections within ten (10) days of the date on which the first objections were filed, or within the time otherwise prescribed by this rule, whichever period last expires. Such objections shall be considered a motion. Objections shall be specific and state with particularity the grounds therefor. Upon consideration of the objections the court may: adopt, reject or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself."

On June 27, 1986, the report of the referee was filed. The report found in favor of plaintiff. On July 3, 1986, the trial court adopted the referee's report and entered judgment in favor of plaintiff. On July 10, 1986, the trial court mailed a copy of the referee's findings to the defendant. On July 18, 1986, defendant filed its objections to the report. In a judgment entry dated August 11, 1986, the trial court overruled defendant's requests for a JNOV and a new trial and further stated that defendant's filed objections were admitted but overruled. The trial court lifted a stay on the judgment and awarded the plaintiff his claimed damages.

In *Pinkerson v. Pinkerson* (1982), 7 Ohio App.3d 319, 7 OBR 415, 455 N.E.2d 693, the court held:

"The clear import of Civ.R. 53(E) is to provide litigants with a meaningful opportunity to register objections to a report of the referee before judgment is entered thereon, and a failure to provide such an opportunity to object is prejudicial error."

In *Pinkerson,* the appellant was not afforded an opportunity to file objections to the referee's report. The court vacated the judgment and remanded the cause to the trial court for it to consider whatever objections might be raised to the report.

The situation in the present case is distinguishable from the *Pinkerson* facts. The trial court in this action essentially vacated its premature adoption of the referee's report and admitted the objections. The court clearly admitted the objections, deemed them overruled, and readopted the referee's report. We believe the litigant was provided a meaningful opportunity to register his objections and, therefore, was not prejudiced.

The trial court already took the corrective action that we would have ordered, *i.e.*, a vacation of the earlier judgment for a consideration of defendant's objections.

The defendant's second and third assignments of error are overruled.

### III

The fourth assignment of error reads:

"Where findings of the referee are mailed to the parties on July 10, 1986 and the losing party finds eight (8) days later for the first time that the court has entered a judgment exactly one (1) week prior to the time when the referee's findings were mailed out, and he files on July 23, 1986, five (5) days after he learns of the court's entry, a motion for judgment non obstante veredicto and files contemporaneously a motion for new trial, said motions are timely filed, having been filed within fourteen (14) days from the time the referee's findings were mailed out, and within ten (10) days of the time the litigant learned of the court's entry."

Defendant contends in this last assignment of error that it was disallowed an opportunity to object to the referee's findings and thus its requests for a JNOV and new trial should have been granted. We have previously determined in assignments of error numbers two and three that defendant was afforded an opportunity to object and thus no prejudice resulted.

Defendant's fourth assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and MATIA, J., concur.

HANS R. VEIT, J., of the Court of Common Pleas of Geauga County, sitting by assignment.