OPINION
{¶ 1} Defendants-appellants, Lansing Gardens Apartments (Lansing Gardens) and Rose Ewing (Ewing), appeal the small claims judgment entered in favor of plaintiff-appellee, Mary Marsh (Marsh) in the Belmont County Court, Northern Division.
 {¶ 2} Lansing Gardens is an apartment complex located in Bridgeport, Ohio. After renting an apartment there for several years, Marsh began to experience problems with the electrical system in her apartment. Unexpectedly, lights would flicker and sparks would fly from sockets and switches. Management at the complex inspected the apartment, but could find nothing wrong with the electrical system. However, the problems persisted and reoccurred. Marsh claimed that the electrical system resulted in damage to her television, VCR, DVD player, stereo, and two ceiling fans. On one occasion when she was taking a shower, the lights went out and the water turned cold. Further instances resulted in the replacement of two water heaters.
 {¶ 3} Management ultimately offered Marsh another apartment at the complex and she moved into it. Marsh did not encounter any electrical problems with the new apartment.
 {¶ 4} On May 15, 2007, Marsh filed a small claims complaint against Lansing Gardens. Above the form section entitled "DEFENDANT INFORMATION," Marsh listed Ewing as the landlord. Marsh asked for $3,000.00 in damages. In addition to the damaged appliances, she also sought payment for the expenses she incurred in moving to the other apartment and mental anguish.
 {¶ 5} On June 8, 2007, Ewing filed what was, in substance, an answer to Marsh's complaint on behalf of Lansing Gardens. Ewing identified herself as the site manager for the complex. She countered that management had done everything it could to resolve the electrical problems in Marsh's first apartment. She also contended the ceiling fans and water heaters were replaced at no cost to Marsh.
 {¶ 6} The matter proceeded to a bench trial on June 29, 2007. Neither party was represented by counsel. Marsh presented her case, including numerous *Page 2 
notarized statements from individuals supporting her claims. She also presented the testimony of four witnesses, two of whom witnessed the electrical phenomena that occurred in her apartment. Ewing presented her case on behalf of Lansing Gardens along with the testimony of the head of maintenance. Later that same day, the trial court awarded Marsh $994.50. This appeal followed.
 {¶ 7} On appeal, both parties are now represented by counsel. Lansing Gardens raises three assignments of error. Lansing Gardens' first assignment of error states:
 {¶ 8} "The trial court committed reversible error and ruled against the manifest weight of the evidence in determining the Appellants were responsible to pay damages to Appellee."
 {¶ 9} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,8 O.O.3d 261, 376 N.E.2d 578, syllabus. A reviewing court has an obligation to presume that the findings of the trier of fact are correct. Seasons CoalCo., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408,461 N.E.2d 1273. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80, 10 OBR 408,461 N.E.2d 1273. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. at 81, 10 OBR 408, 461 N.E.2d 1273.
 {¶ 10} Lansing Gardens argues that the trial court's judgment in favor of Marsh was against the manifest weight of the evidence. It questions Marsh's credibility by stating that no one was able to corroborate her claim that the alleged *Page 3 
faulty electrical system "blew up" her appliances. It also stresses that licensed electricians inspected the apartment on three separate occasions and could not find any problems with the electrical system. In contrast, Lansing Gardens points out that Marsh offered no testimony to contradict this testimony; nor did she have her own electrician examine the apartment.
 {¶ 11} Marsh responds that the trial court's judgment was supported by competent, credible evidence and was, therefore, not against the manifest weight of the evidence. In support, Marsh relies on her own testimony, the testimony of two others who witnessed first-hand lights flickering and sparks flying, and the notarized statements of others who witnessed similar occurrences. Furthermore, Marsh cites the testimony of Homer Van Dyne, the head of maintenance at Lansing Gardens. He acknowledged that the flickering lights were "caused by a spot on the buss bar in the breaker box that was slightly corroded." (Tr. 37.) Also, upon questioning from the trial court judge, Van Dyne acknowledged that there were things done to correct problems with the electrical system. (Tr. 37.)
 {¶ 12} Here, the trial court's judgment is supported by competent, credible evidence, and, therefore, is not against the manifest weight of the evidence. Lansing Gardens's primary argument is that Marsh did not present the testimony of any "qualified" person to explain that the electrical system in the apartment caused the damage to her appliances. The suggestion implicit in this argument is that Marsh should have been required to present expert testimony that the electrical system in her apartment was to blame for the damage to her appliances. Lansing Gardens's argument ignores the nature of this case — a small claims complaint. This court has recognized that "[s]mall claims court is a `layman's forum,' and any attempt to require expert testimony is an undue burden on the plaintiff." Stull v. Budget Interior, 7th Dist. No. 02 BA 17, 2002-Ohio-5230, at ¶ 11. Therefore, Marsh was not required to produce a more "qualified" person to testify on the condition of the electrical system in her apartment. The circumstantial evidence she presented was enough to support the trial court's decision. *Page 4 
 {¶ 13} Marsh testified that lights in the apartment would go out all the time. (Tr. 5.) She also testified that lights in the apartment would flicker from time to time. (Tr. 6, 14.) She stated that various appliances she was using would just "blow up" on her for no apparent reason. (Tr. 7) In addition to two ceiling fans, a TV, VCR, and DVD player all were rendered inoperable within a relatively short period of time. (Tr. 23.) On one occasion, the lights went out and the water went cold while she was showering. (Tr. 17.) Subsequently, two electric water heaters had to be replaced. (Tr. 16.)
 {¶ 14} A fellow tenant, Doris Butler, testified at trial and corroborated Marsh's claims. Referring to Marsh's apartment, she stated, "When you'd flip switches on, sparks would fly out." (Tr. 21.) She also indicated that other tenants in Marsh's building had complained of similar problems. (Tr. 23.) Thomas Sabo testified to flickering lights, sparks flying off of light switches, and Marsh's ceiling fan and TV going out. (Tr. 27.) Marsh supplemented this testimony with statements from other tenants who were either too old or frail to come to court who referred to similar problems in Marsh's apartment and their own.
 {¶ 15} Accordingly, Lansing Gardens' first assignment of error is without merit.
 {¶ 16} Lansing Gardens' second assignment of error states:
 {¶ 17} "The trial court committed reversible error by awarding $994.50 to the Plaintiff as there was no competent credible evidence to support a judgment for that amount."
 {¶ 18} Lansing Gardens maintains the various testimony and statements from witnesses concerning the cost of the replacement appliances and when they were purchased was conflicting and could not be deemed reliable or credible without corroboration in the form of receipts.
 {¶ 19} Marsh counters that there was competent, credible evidence to support the trial court's award of $994.50. Again, she relies on her own testimony and the witness statements she presented at trial. *Page 5 
 {¶ 20} In this instance, the trial court's award of $994.50 is supported by competent, credible evidence, and, therefore, is not against the manifest weight of the evidence. The cost of Marsh's replacement TV and stereo was $189.00 and $159.00, respectively (Tr. 11, 13-14; May 10, 2007 Statement of Donald Sullivan.) Marsh's daughter, Carla Kirkland-Needham, in her written statement, stated that she and her husband bought Marsh two ceiling fans and a DVD/VCR combo unit. The fans each cost $49.96 plus tax which would amount to $53.46 each. (Tr. 15; May 15, 2007 Statement of Carla Kirkland-Needham.) Marsh had individual VCR and DVD players each of which were damaged on separate occasions. Marsh testified that her original VCR had cost her around $100.00 and that the DVD player cost $39.00. (Tr. 12-13.) A DVD/VCR combo unit which was purchased to replace Marsh's damaged VCR and DVD units was $139.99 plus tax which would amount to $149.79. (May 15, 2007 Statement of Carla Kirkland-Needham.) According to Marsh's daughter, it too was damaged beyond repair. (May 15, 2007 Statement of Carla Kirkland-Needham.)
 {¶ 21} Marsh also presented evidence concerning costs she incurred in moving to the other apartment. A telephone bill and two cable bills Marsh submitted for around the time of her move were $56.23, $122.28, and $56.62, respectively, for a total of $235.13.The telephone bill reflected that it cost her $24.55 to switch that service to her new apartment. (May 7, 2007 AT T Monthly Statement.) One of the cable bills reflected a $14.95 reconnect charge. (May 2, 2007 Comcast Statement of Service.) She also paid $200.00 to various people to help her move: $80.00 (Statement of Cam Anastasio), $50.00 (Statement of Thomas Sabo), $30.00 (Statement of Jean Kobus), and $40.00 (Statement of Cathy Berisford).
 {¶ 22} These costs by themselves total $983.21, includingonly those fees from the telephone and cable bills directly related to reconnection. To the extent that figure differs from the $994.50 awarded, the trial court very well may have drawn on other fees and costs that appeared on her telephone and cable bills. Likewise, the balance of the total reward can also be attributed to the incidental costs associated with an unanticipated move from one residence to another. Also, there was evidence *Page 6 
that Marsh suffered damages as a result of the emotional toll the problems with her apartment took on her. Marsh submitted a statement from her doctor, Charles L. Geiger, D.O., diagnosing her with anxiety. Dr. Geiger opined that the stress she was experiencing relative to the problems she was having with her apartment exacerbated her condition and contributed to her weight loss. The trial court's award of damages was well within the range of damages testified to at trial and, therefore, is supported by competent, credible evidence.
 {¶ 23} Accordingly, Lansing Gardens' second assignment of error is without merit.
 {¶ 24} Lansing Gardens' third assignment of error states:
 {¶ 25} "The trial court committed reversible error by not stating in its opinion which defendant the judgment was against."
 {¶ 26} Lansing Gardens maintains that the complaint filed in this case lists two defendants, itself and Rose Ewing. When entering judgment, the trial court stated, in relevant part, "Judgment is rendered in favor of the Plaintiff and against the Defendant in the sum of $994.50 with interest at 8% per annum plus Court Costs of $45.00 which are taxed the Defendant." Lansing Gardens complains that the trial court failed to specify which defendant should satisfy the judgment.
 {¶ 27} Marsh believes that both Lansing Gardens and Ewing should be held accountable. Marsh points to the judgment entry which bears the caption "MARY MARSH PLAINTIFF vs LANSING GARDENS APTS./ROSE EWING, DEFENDANT." Marsh contends that Ewing is a liable party because she consistently used the word "we," aligning herself with Lansing Gardens.
 {¶ 28} The trial court's June 29, 2007 judgment entry refers to only one "Defendant." Obviously, the "Defendant" has to be either Lansing Gardens or Ewing. As alluded to earlier, when Marsh filed her complaint she listed Lansing Gardens under the form section entitled "DEFENDANT INFORMATION," but listed Ewing as the landlord above that same section. In her response to Marsh's complaint, Ewing listed Lansing Gardens Apts. under the section for defendant information, and listed *Page 7 
herself as site manager beside the same section. Ewing also signed her response with "site manager" as a parenthetical. At trial, Ewing referred to herself as only the site manager.
 {¶ 29} Generally, an agent may not be held personally liable to the persons with whom they deal where the agent is acting for a disclosed principal, i.e., where both the existence of the agency and the identity of the principal are known to the person with whom the agent deals.James G. Smith Associates, Inc. v. Everett (1981), 1 Ohio App.3d 118,120, 1 OBR 424, 439 N.E.2d 932. Here, it is apparent that Ewing was acting as agent on behalf of a disclosed principal, Lansing Gardens. That, coupled with the informality of small claims cases and their relaxed pleading requirements, dictates that Ewing should not be held personally liable for Lansing Gardens.
 {¶ 30} As indicated on the complaint, the defendant herein is Lansing Gardens Apts. This would also be the party judgment was rendered against.
 {¶ 31} Accordingly, Lansing Gardens' third assignment of error is without merit.
 {¶ 32} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs in judgment only. *Page 1