[Cite as *Mitchell v. Michael J. Auto Sales*, 2022-Ohio-2591.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NATASHA MITCHELL, | : | APPEAL NO. C-210368 |
| | | TRIAL NO. 20CV-18999 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| MICHAEL J. AUTO SALES, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 29, 2022

*Bradley R. Hoyt*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} Defendant-appellant Michael J. Auto Sales ("Michael J.'s") appeals the judgment of the Hamilton County Municipal Court in favor of plaintiff-appellee Natasha Mitchell for $2,200. In one assignment of error, Michael J.'s contends that the trial court's decision must be reversed because it was against the manifest weight of the evidence.[1] For the reasons that follow, we affirm the judgment of the trial court.

### *Facts and Procedure*

{¶2} On November 5, 2020, plaintiff-appellee Natasha Mitchell purchased a used 2005 Chrysler Pacifica "as-is" from defendant-appellant Michael J.'s. Less than one hour later, the vehicle caught fire while she was driving on the highway.

{¶3} On November 10, 2020, after unsuccessfully attempting to resolve the issue with Michael J.'s, Mitchell filed a complaint in the small claims division of the Hamilton County Municipal Court against "Michael J. Auto Sales dba Weinle Motorsports." She requested $2,200 in damages—the purchase price of the vehicle.

{¶4} The matter proceeded to a bench trial in the small claims division before a magistrate. Mitchell testified that after test driving the vehicle, she was inside the dealership completing paperwork for the sale, when a technician told her, "I notice[d] that the radio—something about some radio frequency, something, was gone. * * * But don't worry about it, I'll take care of it for you." Mitchell testified that the technician "proceeded to go to the back of the lot, take a fuse off of an older model Chrysler Pacifica, [and] place the fuse in the Pacifica that I purchased."

---

[1] Mitchell did not file a brief or appear at oral argument. Pursuant to App.R. 18(C), if an appellee fails to file a brief, this court "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶5}  Mitchell testified that after completing the sale, "10 minutes off the lot, I'm on the highway, jump out the vehicle; the entire vehicle engulfed in flames." Mitchell called the fire department, and had the vehicle towed to her home.  Mitchell emailed Michael J.'s that night to tell them about the problem, and was told to return to the dealership the following day.  Mitchell testified that after arriving at the lot the next day, she was told that Michael J.'s was "going to work something out" with her. She spent three hours test driving several cars, but was then told that "Mr. Michael has changed his mind."  She testified that she "was sent away from the lot without * * * any solution."  Upon returning home, the car was gone.  Mitchell testified that she spoke with her property manager, and "every tow truck in the metro area" but was unable to locate the vehicle.

{¶6}  Mitchell submitted her charred receipt for the vehicle, email correspondence between her and appellant, her call log, and photographs of the vehicle after the fire.  The pictures show that the entire front half of the vehicle—inside and outside—was destroyed by the fire. In one photograph, there is visible charring in one concentrated area of the vehicle's hood.  She did not dispute that she bought the vehicle "as-is—no dealer warranty."

{¶7}  Michael Weinle, the owner, testified on behalf of Michael J.'s that he "was told they put a fuse in it to—I think it was a headlight fuse or a radiator fan or fuse, and it had nothing to do with the firewall." Weinle disputed Mitchell's contention that a faulty fuse could even start a fire, and theorized that the fire was started by gasoline.

{¶8}  After hearing from both parties, the magistrate recommended judgment for Mitchell in the amount of $2,200 plus court costs.  On March 24, 2021, Michael

3

J.'s objected to the magistrate's decision and requested findings of fact and conclusions of law.

{¶9}   The magistrate found that there was no dispute that the sale agreement was "as-is," and that after signing the contract to purchase the vehicle, but before leaving the premises, a Michael J.'s technician replaced a fuse in the vehicle. The court did not make a finding as to why the mechanic replaced the fuse, or whether the mechanic used the correct fuse.

{¶10}  The magistrate concluded that "the Defendant knew of an issue with the vehicle, but did not disclose what the issue was." And that Michael J.'s "committed fraud as to an express warranty when they knew there was a defect with the car and/or negligence in the repair of the car in the replacement of the fuse and the resulting fire after the purchase of the vehicle."

{¶11}  On May 28, 2021, the court overruled Michael J.'s objections and found in favor of Mitchell in the amount of $2,200.[2]

{¶12}  Michael J.'s timely appealed.

### Sole Assignment of Error

{¶13}  In a single assignment of error, Michael J.'s argues that the magistrate's decision was against the manifest weight of the evidence and the trial court erred in adopting the magistrate decision and finding in favor of the plaintiff for $2,200.

{¶14}  Under a manifest-weight-of-the-evidence challenge, we must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and

---

[2] The court initially overruled the objections and approved the magistrate's decision on April 16, 2021, noting that appellant had not filed transcripts. However, on April 22, 2021, Michael J.'s filed a motion for relief from judgment pursuant to Civ.R. 60(B) and filed transcripts shortly thereafter. After receiving the transcripts, the court vacated its initial judgment, before reaching the same conclusion on May 28, 2021.

determine whether the trial court "clearly lost its way and created such a manifest miscarriage of justice that its judgment must be reversed and a new trial ordered." *Crenshaw v. Michael J.'s Auto Sales*, 2021-Ohio-1468, 170 N.E.3d 1291, ¶ 16 (1st Dist.), citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. " 'If the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.' " *Battle Axe Constr., L.L.C. v. H. Hafner & Sons, Inc.*, 1st Dist. Hamilton No. C-180640, 2019-Ohio-4191, ¶ 12, quoting *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988).

### *Express Warranty*

**{¶15}** The magistrate held that "Michael J. committed fraud as to an express warranty when they knew there was a defect with the car." Specifically, the magistrate found that "[t]he mechanic replaced a 'fuse' which was taken off another car in the lot. [Michael J.'s] knew of an issue with the vehicle but did not disclose what the issue was."

**{¶16}** Michael J.'s contends that there is no dispute that the contract in this case contains a written "as-is" clause and therefore it is not liable for any mechanical issues or defects once the car was driven off of its lot. Michael J.'s further argues that there was no fraud because it let Mitchell know that there was a problem with a fuse and the fuse was replaced.

**{¶17}** Generally, "a seller of goods impliedly warrants that a good is merchantable and fit for a particular use." *Crenshaw,* 2021-Ohio-1468, 170 N.E.3d

1291, at ¶ 12, citing R.C. 1302.29(B). However, the use of a written "as-is" clause disclaims all of these implied warranties. *Id.,* citing R.C. 1302.29(C)(1).

{**¶18**} Nevertheless, express oral warranties made to a buyer can survive an "as-is" clause. *Barksdale v. Van's Auto Sales, Inc.,* 62 Ohio App.3d 724, 728-729, 577 N.E.2d 426 (8th Dist.1989) (finding that seller's oral express warranty predominated the "as is" clause in the sales contract); *see Crenshaw* at ¶ 13 (written "we owe agreement" was not negated by "as-is" clause in contract); *Perkins v. Land Rover of Akron,* 7th Dist. Mahoning No. 03 MA 33, 2003-Ohio-6722, ¶ 19 (written express warranty as to certain components was effective despite "as-is" clause). An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." R.C. 1302.26(A)(1); UCC 2-313.

{**¶19**} The timing of the affirmation is not material. *See* R.C. 1302.26; UCC 2-313, Comment 7. Rather, "[t]he sole question is whether the language * * * [is] fairly to be regarded as part of the contract." *Id.* "If language is used after the closing of the deal * * * the warranty becomes a modification, and need not be supported by consideration if it is otherwise reasonable and in order." *Id.*

{**¶20**} If a seller makes an express warranty, the "as-is" clause is not necessarily meaningless. *Land Rover* at ¶ 19. "Instead, the phrase 'as is' excludes all warranties *except* those expressly made to the buyer." (Emphasis sic.) *Id.* In applying the provisions together, we have said that " '[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other.' " *Crenshaw* at ¶ 13, quoting R.C. 1302.29(A); UCC 2-316. However, where the "as-is" clause "cannot be

reasonably construed as consistent with the seller's oral express warranty, the express warranty will prevail and the inconsistent provisions deemed inoperative to the extent they are unreasonable." *Barksdale* at 729.

{¶21} In *Barksdale*, a used car buyer in an "as-is" sale inquired about a car's transmission and was told it just needed a fluid and filter change, but that it was otherwise in working order. *Barksdale,* 62 Ohio App.3d at 728, 577 N.E.2d 426. In *Land Rover*, the sales contract included a specific note that the dealer would repair the air conditioning. *Land Rover,* 7th Dist. Mahoning No. 03 MA 33, 2003-Ohio-6722, at ¶ 4. In *Crenshaw*, Michael J.'s entered into a separate "we owe" agreement with a buyer to repair the exhaust, air conditioning, brake pads, hood latch release, and glove box. *Crenshaw,* 2021-Ohio-1468, 170 N.E.3d 1291, at ¶ 2. In each of these cases, the named components failed and the court found an express warranty was made as to the specific component that was not excluded by the "as-is" clause. *Barksdale* at 430; *Land Rover* at ¶ 20; *Crenshaw* at ¶ 15.

{¶22} The record demonstrates that while Mitchell was completing payment paperwork for the vehicle, the technician told her about the fuse issue, but assured her that the repair would "take care of it." Michael J.'s does not dispute this interaction. Michael J.'s thus expressly warranted that the new fuse would fix the defect that it found in the vehicle.

{¶23} Therefore, the magistrate's conclusion that an express warranty was created as to the fuse and the part of the vehicle that was repaired by the new fuse was supported by the evidence.

### *Fraud*

**{¶24}** Michael J.'s argues it could not have committed fraud as to the express warranty because Mitchell was informed of the fuse replacement.

**{¶25}** Despite the existence of an "as is" clause in a contract, a seller may commit fraud. *Land Rover,* 7th Dist. Mahoning No. 03 MA 33, 2003-Ohio-6722, at ¶ 24. "Where a used car dealer sells a vehicle 'as is' he is under a duty to use ordinary care to warn the purchaser of defects of which he has, or by the exercise of reasonable care, should have knowledge." *Id.*

**{¶26}** Here, the trial court found that Michael J.'s "knew of an issue with the vehicle but did not disclose what the issue was." However, the testimony showed that Michael J.'s did disclose that a fuse needed to be replaced. The mechanic who replaced the fuse did not testify at trial and neither witness who did testify at trial knew exactly why the fuse needed to be replaced. Nevertheless, the issue with the fuse was disclosed to Mitchell and neither party disputes that the fuse was replaced. Mitchell did not allege that there was any other defect that had not been disclosed. Accordingly, the magistrate's finding that Michael J.'s committed fraud as to an express warranty was against the manifest weight of the evidence.

### *Negligence*

**{¶27}** Michael J.'s argues that the magistrate clearly lost her way and created a manifest miscarriage of justice when she also found that it "committed * * * negligence in the repair of the car or in the replacement of the fuse," which caused the fire.

**{¶28}** Michael J.'s argues that there was no evidence presented that the replaced fuse caused the fire. In fact, Michael J.'s points to the testimony of Weinle to

8

support its contention that the evidence showed the fuse *did not* cause the fire. Weinle testified that "the only thing a fuse does is stop a fire, not start a fire. * * * If you have a fire, it goes real quick, that's caused by gasoline, not by electric." Michael J.'s claims that Weinle is "an expert with cars being in the business [sic] having sold, repaired and raced automobiles for years."

{¶29} A negligence claim requires: "a duty, breach of that duty, and an injury caused by that breach." *Cincinnati Bell Tel. Co. v. J.K. Meurer Corp.*, 2022-Ohio-540, 185 N.E.3d 632, ¶ 22 (1st Dist.).

{¶30} By disclosing a defect and agreeing to fix it by replacing a fuse, Michael J.'s had a duty to competently perform the repair. The question then becomes whether Michael J.'s breached its duty to perform the repair by performing a faulty repair, and whether a faulty repair caused the fire. "Any damage to the vehicle resulting from a faulty repair would not be precluded by the 'as is' exclusion of warranties." *Land Rover* at ¶ 20.

{¶31} Michael J.'s faults Mitchell for failing to present expert testimony about the cause of the fire. However, this was a case in small claims court. "[B]y design, proceedings in small claims courts are informal and geared to allowing individuals to resolve uncomplicated disputes quickly and inexpensively. Pro se activity is assumed and encouraged." *Cleveland Bar Assn. v. Pearlman*, 106 Ohio St.3d 136, 2005-Ohio-4107, 832 N.E.2d 1193, ¶ 15. The Ohio Rules of Evidence do not apply in small claims court, but the evidence still must be "reliable." *See Erwin v. Best Buy Auto Sales*, 11th Dist. Lake No. 2002-L-117, 2003-Ohio-6770, ¶ 10; *Cunningham v. Michael J. Auto Sales*, 1st Dist. Hamilton No. C-200087, 2021-Ohio-1390, ¶ 17-18; *see also* Evid.R. 101(C)(8). " 'Small claims court is a "layman's forum," and any attempt to require

9

expert testimony is an undue burden on the plaintiff.' " *Marsh v. Lansing Gardens Apts.*, 7th Dist. Belmont No. 07-BE-32, 2008-Ohio-3404, ¶ 12, quoting *Stull v. Budget Interior*, 7th Dist. Belmont No. 02-BA-17, 2002-Ohio-5230, ¶ 11.

{¶32} In *Marsh*, the court held that the circumstantial evidence presented by the plaintiff was enough to prove that the electrical system in her apartment caused the damage to her appliances. *Marsh* at ¶ 12. The plaintiff testified that the lights in her apartment would go out all the time and flicker from time to time. *Id.* at ¶ 13. She claimed that various appliances in her apartment would " 'blow up' on her for no apparent reason." *Id.* She testified that two ceiling fans, a television, and a DVD player were rendered inoperable and she had to replace two electric water heaters. *Id.* Other tenants also testified about issues with the lights such as sparks flying out when you flipped a switch and flickering lights. *Id.* at ¶ 14.

{¶33} In *Finkley v. Eagle Chevrolet-Oldsmobile,* 11th Dist. Trumbull No. 96-T-5509, 1997 Ohio App. LEXIS 3662 (Aug. 15, 1997), the court held that a vehicle owner's testimony was sufficient to demonstrate a claim for negligent repair of a vehicle when it caught fire "within a matter of hours" after the repair. *Id.* at *5. In that case, the plaintiff took his vehicle to defendant's shop for a repair, and returned days later for a second repair. *Id.* at *1. On the day the plaintiff picked up his vehicle after the second repair, the vehicle caught fire. *Id.* at *2. The plaintiff filed suit. *Id.* At a bench trial, each party presented one witness: the plaintiff testified on his own behalf, and the defendant offered testimony of a service consultant. *Id.* at *4. The trial court found in favor of the plaintiff, finding his testimony to be more credible. *Id.* On appeal, the Eleventh District held that "[w]hile there was not an abundance of evidence, there was competent, credible evidence supporting the trial court's

decision," noting that "within a matter of hours after having allegedly been repaired, a fire broke out in appellee's vehicle * * * ." *Id.*

{¶34} In the case at bar, the circumstantial evidence was enough to support the trial court's decision. It is undisputed that Mitchell test drove the vehicle without incident, Michael J.'s replaced a fuse, and then the vehicle caught fire within ten minutes after Mitchell drove it off the lot. In addition to the timing of the events, Mitchell testified that the technician replaced the fuse with one from an older model on the lot—seemingly without any additional testing or inspection. The court also had photographs of the vehicle, which showed visible charring in one concentrated area of the vehicle's hood. The vehicle mysteriously went missing shortly after the fire, so further analysis of its components was not possible. While each party presented conflicting testimony about the cause of the fire, the trial court was in the best position to determine whose evidence was most credible. The court did not lose its way in finding that the fuse replacement was the actual and proximate cause of the fire.

{¶35} Therefore, we hold that trial court's determination that Michael J.'s was negligent in the repair of the vehicle or replacement of the fuse was not against the manifest weight of the evidence.

### *Acceptance*

{¶36} Finally, Michael J.'s asserts that Mitchell accepted the vehicle after she had a reasonable opportunity to inspect it. *See* R.C. 1302.64(A)(1). Michael J.'s has not articulated its argument on this point or directed us to any authority beyond the Ohio Revised Code to support its argument.

{¶37} R.C. 1302.64(A)(1) provides "acceptance of goods occurs when the buyer: after a reasonable opportunity to inspect the goods signifies to the seller that

the goods are conforming or that he will take or retain them in spite of their non-conformity."

{¶38} The record does not demonstrate that Mitchell had a reasonable opportunity to inspect the vehicle after the repair was made. After Mitchell test drove the vehicle, Michael J.'s assured her that it would make the necessary repairs. Reasonably relying on its expertise, Mitchell completed her payment for the vehicle. Then, the vehicle caught fire, ten minutes after Mitchell began driving it for the first time with the new fuse. This was not a reasonable opportunity to inspect the vehicle. Therefore, Michael J.'s has not demonstrated that Mitchell is precluded from recovery on this basis.

### Conclusion

{¶39} In light of the foregoing analysis, we overrule Michael J.'s assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.