[Cite as *State v. Higgins*, 2022-Ohio-2754.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                                  :              APPEAL NO. C-220043
                                                              TRIAL NO. B-2100488
    Plaintiff-Appellee,                    :

                                                :              *O P I N I O N.*

  vs.                                         :

                                                :

ALISHA HIGGINS,                                 :

    Defendant-Appellant.                   :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 10, 2022


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Alex Scott Havlin*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} The trial court convicted defendant-appellant Alisha Higgins of improperly discharging a firearm into a habitation after the dweller of the home, Kyree Lee, identified Ms. Higgins as the shooter. Ms. Higgins now appeals, claiming that her conviction was both based on insufficient evidence and against the manifest weight of the evidence. Based on our comprehensive review of the record, we disagree and accordingly affirm the judgment of the trial court.

I.

{¶2} On a cold evening in January 2021, shots rang out as bullets crashed into Ms. Lee's second-story townhouse bedroom. Prompted to get out of bed by debris falling from her ceiling and wall, Ms. Lee peeked out her window blinds to see a person she identified as Ms. Higgins slowly driving past her home. Ms. Lee and Ms. Higgins had a simmering feud stemming from their apparently overlapping relationship with a gentleman who happened to be at Ms. Lee's house when the shooting occurred. Ms. Lee testified that as she watched Ms. Higgins drive by, she saw "fire from the gun as [Ms. Higgins] was shooting at my house," confirming that the sounds she heard earlier were related to bullets coming through the bedroom.

{¶3} Ms. Lee called 9-1-1 a few minutes later, telling the dispatcher that someone fired shots into her house from a car. When asked by the dispatcher whether she saw the shooter, Ms. Lee identified Ms. Higgins and described the off-white SUV that drove down her street. At the bench trial, Ms. Lee told the court that she recognized the car because Ms. Higgins had driven by in that same SUV on the previous four or five days as well, presumably searching for their mutual acquaintance.

Ms. Lee testified that, in addition to the car, she could see the shooter's head and hair but not her actual face. That outline, in her testimony, matched Ms. Higgins.

{¶4} Cincinnati police officers Adarryl Birch and Ken Byrne responded to Ms. Lee's 9-1-1 call. Officer Birch testified that he noticed bullet holes in the upstairs bedroom window as the officers pulled up to Ms. Lee's residence. Although poor lighting draped Ms. Lee's driveway, the officers did recover a nine-millimeter shell casing "in the general vicinity as to where the vehicle was alleged to have ridden past," almost directly across from Ms. Lee's bedroom window. The officers did not go into Ms. Lee's home to investigate or retrieve any evidence, and they did not seek out Ms. Higgins that night as part of their response to the incident.

{¶5} On appeal, Ms. Higgins claims that because Ms. Lee conceded there were no distinguishing features of the SUV and that she did not see the face of the shooter, she merely assumed that Ms. Higgins committed the offense. Ms. Higgins points out that the shooter left the scene before police arrived, no firearm was ever recovered, there is no physical or forensic evidence connecting her to the shooting, and she produced an alibi for her whereabouts on the night in question. According to Ms. Higgins, because the state's case rested entirely on the testimony of Ms. Lee, it cannot withstand scrutiny based on the sufficiency of the evidence or the manifest weight of the evidence. Because the weight given to witness credibility determinations is a matter best left to the trier of fact on the state of this record, we overrule both assignments of error and affirm the judgment of the trial court.

II.

{¶6} Ms. Higgins' first assignment of error challenges the sufficiency of the state's evidence. "In a challenge to the sufficiency of the evidence, the question is

whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 19, citing *State v. Jenks,* 61 Ohio St.3d 259, 273, 594 N.E.2d 492 (1991). We review sufficiency questions de novo. *State v. Williams*, 1st Dist. Hamilton No. C-190380, 2020-Ohio-5245, ¶ 15.

{¶7} R.C. 2923.161(A)(1) provides that no person shall knowingly "[d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual" without privilege to do so. Ms. Higgins contends the state failed to prove beyond a reasonable doubt that she pulled the trigger on the night in question because Ms. Lee admitted she never saw the face of the shooter. But "sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law," *State v. Patton*, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 16, and the law does not always require direct observation of facial features in witness identifications. "Identification can be proved by circumstantial evidence, just like every other element the state must prove." *City of Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 25.

{¶8} Ms. Lee and Ms. Higgins were not strangers to one another. Ms. Lee testified that she recognized Ms. Higgins' car from previous unwanted visits to her neighborhood and that she recognized Ms. Higgins' head and hair as she drove by. The 9-1-1 call confirms that Ms. Lee identified Ms. Higgins as the shooter within a few minutes of the incident, and the mutual male friend who apparently generated this animosity can be heard in the background, further substantiating the state's theory of

4

Ms. Higgins' motive. It is undisputed that someone fired shots into Ms. Lee's home that night, and the physical evidence supports Ms. Lee's narrative that at least one shot was fired from the approximate location of where she reported seeing the car drive slowly by and the flash of the gunshot.

{¶9} Nevertheless, Ms. Higgins maintains that she presented an alibi that should exculpate her. Ms. Higgins' mother did testify that family members—including Ms. Higgins—slept over at her house the night of the shooting because they had not had a chance to celebrate the holidays yet due to Covid. One of Ms. Higgins' sisters also corroborated this story, explaining that Ms. Higgins relaxed with her family on the night in question without venturing out at any point in the evening.

{¶10} While Ms. Lee's identification testimony was far from iron-clad, the trial judge certainly could have believed her—or not. It is well-settled law that " 'the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' " *State v. Hudson*, 1st Dist. Hamilton No. C-170681, 2019-Ohio-3497, ¶ 16, quoting *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). The trial court concluded that the alibi testimony established a sleepover may have occurred, but that Ms. Higgins' family did not provide an alibi for the exact time frame the alleged events occurred or the exact whereabouts of Ms. Higgins during the shooting. Because the trial court was "free to believe or disbelieve all or any of the testimony," we will not disturb that finding on appeal. *Id.* The trial court also found Ms. Lee's account credible, emphasizing the consistency of her testimony across both direct and cross-examination.

{¶11} On those facts, this record contains sufficient evidence from which a factfinder could conclude beyond a reasonable doubt that Ms. Higgins perpetrated the

crime, despite Ms. Lee being unable to identify the shooter's specific facial features, and we accordingly overrule Ms. Higgins' first assignment of error.

{¶12} In her second assignment of error, Ms. Higgins maintains that her conviction also runs counter to the manifest weight of the evidence. Convictions supported by sufficient evidence may still be reversed as being against the manifest weight of the evidence. *Patton*, 1st Dist. Hamilton No. C-190649, 2021-Ohio-295, at ¶ 16. "A manifest-weight-of-the-evidence argument challenges the believability of the evidence." *State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10. Our analysis here asks whether the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We cannot say that this case rises to such a level.

{¶13} Ms. Higgins' manifest-weight argument rests on the same contention above, that she could not be identified as the shooter because Ms. Lee failed to see her face. Purported deficiencies in an eyewitness's trial testimony, without more, are generally not enough to overturn a conviction on manifest-weight grounds. *See State v. Daniels*, 8th Dist. Cuyahoga No. 103663, 2016-Ohio-7299, ¶ 16 ("[C]redible eyewitness identification testimony is enough to withstand a challenge to the weight of the evidence in favor of a conviction."). In finding Ms. Lee to be a reliable and credible witness, the trial court particularly noted that her identification of Ms. Higgins as the shooter remained consistent from the time of the shooting, through direct examination, and during cross-examination. "Ultimately, this is an issue of conflicting testimony, and the determination of witnesses' credibility and the

resolution of conflicts in the evidence are matters for the trier of facts." *Kinnett v. Corporate Document Solutions, Inc.*, 1st Dist. Hamilton No. C-180189, 2019-Ohio-2025, ¶ 21, citing *Cross v. Ledford*, 161 Ohio St. 469, 477-478, 120 N.E.2d 118 (1954). As such, "[w]e must defer to the trial court's credibility determination and conclusion." *Id*. at ¶ 22.

**{¶14}** Accordingly, we overrule Ms. Higgins' second assignment of error challenging the manifest weight of the evidence supporting her conviction.

\*　　\*　　\*

**{¶15}** In light of the foregoing analysis, we overrule Ms. Higgins' first and second assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion