[Cite as *State v. Mitchell*, 2022-Ohio-3713.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210675 |
| | | TRIAL NO. B-1900628 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| MARCUS MITCHELL, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 19. 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender, for Defendant-Appellant.

**BOCK, Judge.**

{¶1}    In this appeal, defendant-appellant Marcus Mitchell contends that his conviction for rape in violation of R.C. 2907.02(A)(2) was against the manifest weight of the evidence and supported by insufficient evidence. We disagree and affirm his conviction.

## I. <u>Facts and Procedure</u>

{¶2}    Mitchell was charged with one count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony, which prohibits a person from "engag[ing] in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶3}    At trial, the state established, through text messages and testimony from the rape survivor ("C.L."), that Mitchell, under the guise of seeking help with a college project, had invited C.L. to an apartment on Stratford Avenue near the University of Cincinnati on homecoming night. A friend dropped off C.L. at the address provided by Mitchell. Mitchell accompanied her to what appeared to be a dorm room. Mitchell was upset over some personal items missing from his room and, over the next few hours, came and went from the room, leaving her alone. During his final disappearance, C.L. fell asleep.

{¶4}    C.L. testified that she was awakened by a phone call around 10:00 p.m. It was Mitchell, warning her that the police were on their way, and she needed to leave. In a text message, he told her to walk to an address on Riddle Road. Later, he told her to cut behind the back of a building on Clifton Avenue. Her phone died shortly thereafter. She looked in her purse for a bus pass or money, but they were gone. According to C.L., she cut through the parking lot behind the building as suggested by Mitchell when she was tackled from behind. C.L. identified Mitchell as the assailant.

{¶5} C.L. testified that Mitchell held her face-down on the pavement by pressing down on her neck, inserted his penis into her vagina, and thrusted. She was unable to scream due to the pressure on her neck. She recalled that he finished, threatened to kill her if she moved, and then ran toward Riddle Road. In the aftermath, she walked back towards Stratford Avenue until she found someone to call 911.

{¶6} The state presented testimony and body-camera footage from University of Cincinnati Police Officers Doddy, Jagoditz, and Brinker. Doddy was the responding officer who accompanied C.L. to the hospital. Jagoditz and Brinker conducted the investigation and interviewed Mitchell at the Stratford Avenue residence. During the interview, the officers asked Mitchell what girl he was "hooking up with" and showed him a photo of C.L. In response, Mitchell asked Brinker and Jagoditz if the investigation involved a rape charge. And while he initially denied that C.L. was in his room and having "hooked up" with C.L., he later admitted to engaging in oral sex with C.L.

{¶7} In addition, the state's evidence included testimony from Chelsea Harrington, the Sexual Assault Nurse Examiner ("SANE") who examined C.L. at the hospital, as well as Harrington's SANE report. In addition, the state entered a DNA-testing report stating that Mitchell matched the DNA profile identified from the sperm in the vaginal swabs from the rape kit and "[i]n the absence of an identical twin, Marcus Mitchell is the source of the major DNA profile" with a "1 in 616 octillion 500 septillion" statistical probability of a match.

{¶8} The trial court found Mitchell guilty of rape and imposed a six-year term of incarceration with credit for time served and a Tier III sex offender designation. The trial court described C.L. as "a very credible witness," whose testimony established the

3

elements of rape. The trial court found C.L.'s testimony consistent with Harrington's testimony and other evidence presented by the state. According to the trial court, any inconsistencies were immaterial to the elements of the offense and were "explained by the SANE nurse as an example of a side effect of being subject to strangulation."

## II. Law and Analysis

{¶9} In a single assignment of error, Mitchell maintains that his conviction was supported by insufficient evidence and contrary to the manifest weight of the evidence. In particular, Mitchell contends that the evidence supporting his conviction was inconsistent and lacking in credibility. We disagree.

### Mitchell's Conviction was Supported by Sufficient Evidence

{¶10} We begin with Mitchell's sufficiency argument, which we review de novo. *State v. Lowery*, 1st Dist. Hamilton No. C-040157, 2005-Ohio-1181, ¶ 19. In a sufficiency challenge, we view the evidence and all reasonable inferences in a light most favorable to the state to see if " ' "any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." ' " *State v. Armstead*, 1st Dist. Hamilton No. C-200417, 2021-Ohio-4000, ¶ 9, quoting *State v. Scott*, 1st Dist. Hamilton Nos. C-200385 and C-200403, 2021-Ohio-3427, ¶ 23, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶11} Under R.C. 2907.02(A)(2), rape consists of "sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The statute does not require proof of physical resistance by the survivor. R.C. 2907.02(C). Relevant here, sexual conduct includes vaginal and anal intercourse—"[p]enetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

4

{¶12} Following a review of the record, we hold that the state satisfied its evidentiary burden and produced sufficient evidence to support Mitchell's conviction for rape. The evidence established sexual conduct between Mitchell and C.L. Specifically, the DNA-test results established that Mitchell, in absence of an identical twin, matched the DNA profile extracted from the sperm on the vaginal and anal swabs, and the probability of those matches was "1 in 616 octillion 500 septillion." Likewise, C.L. testified that Mitchell thrusted his penis inside of her vagina. The state presented evidence that the sexual conduct was compelled. C.L. testified that Mitchell tackled her to the ground and she "struggled and tried to fight [him] off." She was unable to scream due to the pressure exerted on her neck. And the evidence established the sexual conduct was committed with force. C.L. testified that Mitchell brought her to the ground by force and immobilized her during the rape. Nurse Harrington testified that C.L.'s right cheek was swollen. Harrington also testified that C.L.'s shorts were drenched and had a strong urine odor. Likewise, Harrington's SANE report corroborated C.L.'s testimony—in the hospital she was wearing a "[s]hirt at the time of the assault with [a] large rip down middle" and shorts that were "wet, smelling of urine." Further, C.L. reported pain, dizziness, headache, and fainting to Harrington. These symptoms, including urination, were consistent with strangulation and sexual assault. Still more, Harrington testified that C.L.'s emotional state during the exam was consistent with sexual-assault survivors.

{¶13} While Mitchell casts aspersions on C.L.'s credibility as a witness, in a sufficiency challenge "we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact." *State v. Williams*, 1st Dist. Hamilton No. C-140199, 2015-Ohio-3968, ¶ 43. Therefore, we hold that the

evidence, viewed in a light most favorable to the state, was sufficient to convict Mitchell for rape in violation of R.C. 2907.02(A)(2).

<u>The Evidence Weighed Heavily in Favor of Conviction</u>

**{¶14}** Mitchell contends that his conviction is against the manifest weight of the evidence due to inconsistencies in C.L.'s testimony and credibility issues. In a manifest-weight challenge, the court reviews "the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of all witnesses" to determine " ' "whether the trier of fact clearly lost its way in resolving evidentiary conflicts and rendered a verdict that embodies a manifest miscarriage of justice." ' " *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. To reverse a conviction as against the manifest weight of the evidence, we sit as the proverbial " ' "thirteenth juror" ' " and must disagree "with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). In other words, we must evaluate whether the evidence was credible, believable, and persuasive to warrant a conviction. *See State v. Staley*, 1st Dist. Hamilton Nos. C-200270, C-200271 and C-200272, 2021-Ohio-3086, ¶ 10; *see also Thompkins* at 387.

**{¶15}** Mitchell attempts to reframe C.L.'s testimony as that of a woman out for revenge after engaging in consensual sex. In doing so, Mitchell emphasizes alleged inconsistencies in her testimony, questioning the lack of physical evidence presented at trial. In particular, he maintains that there were no documented physical injuries and no physical evidence recovered at the crime scene. According to Mitchell, C.L. should have sustained injuries when she was "slammed to the ground" and her body

subsequently scraped against the concrete during the rape. Nurse Harrington testified that she did not observe bleeding or abrasions on C.L.'s body and observed no visible injuries to C.L.'s genitalia. Turning to the physical evidence at the scene, Mitchell argues that the absence of physical evidence recovered from the scene undermines C.L.'s credibility. Mitchell contends that there was no debris found on C.L.'s shirt, or in the evidence bag containing the shirt at the trial. Mitchell also points to the missing bra and underwear as evidence that C.L. fabricated the rape. During the exam, C.L. told Harrington that her bra was torn off at the scene of the crime. And C.L. testified that she believed she was wearing underwear, but Harrington noted that she was not wearing any in the hospital. In Mitchell's view, C.L. merely recited the statement she provided to police on the night of the rape.

{¶16} Despite these incongruities, the weight of the evidence supported Mitchell's conviction. Specifically, Mitchell's contentions ignore the testimony of Harrington and her notes from the examination. First, there was physical evidence corroborating C.L.'s testimony. Harrington testified that she observed a leaf on C.L.'s shirt, which constitutes debris. Still more, Harrington testified that sexual-assault survivors "usually have difficulty recalling events" because "[m]emory consolidation is usually broken during a sexual assault." And Harrington noted swelling on C.L.'s cheek. While Mitchell suggests this was insufficient to substantiate C.L.'s testimony, Harrington testified that she examined C.L. shortly after the assault, which minimized the "time for a bruise to develop." Plus, Harrington was not surprised that she did not observe more physical injuries on C.L. because bruising can be difficult to detect on rape survivors with darker skin tones.

**{¶17}** While Mitchell maintains that C.L.'s testimony was not credible due to these inconsistencies, this court has repeatedly recognized that witness credibility is a matter for the trier of fact, who "is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16. Consequently, we afford " 'defer[ence] to the trial court's credibility determination and conclusion.' " *State v. Higgins*, 1st Dist. Hamilton No. C-220043, 2022-Ohio-2754, ¶ 13, quoting *Kinnett v. Corporate Document Solutions, Inc.*, 1st Dist. Hamilton No. C-180189, 2019-Ohio-2025, ¶ 21. Indeed, "[a] conviction may rest solely on the testimony of a single witness, including the victim, if believed, and there is no requirement that a victim's testimony be corroborated to be believed." *State v. Flores-Santiago*, 8th Dist. Cuyahoga No. 108458, 2020-Ohio-1274, ¶ 38. And minor inconsistencies in a witness' testimony does not entitle a defendant to reversal on manifest-weight grounds. *Id.* at ¶ 40.

**{¶18}** In support of his arguments, Mitchell relies on *In re M.C.L.*, 4th Dist. Adams No. 19CA1099, 2020-Ohio-3683, *In re D.L.,* 2016-Ohio-5834, 70 N.E.3d 1201, ¶ 22 (8th Dist.), and *In re Z.B.*, 9th Dist. Medina No. 09CA0039-M, 2010-Ohio-1345, to argue that sexual-assault convictions are often reversed as against the manifest weight of the evidence where the credibility of the state's witness is in question. But the evidence in the record that corroborates C.L.'s testimony distinguishes this case from *In re M.C.L.*, where the defendant's delinquency adjudication for sexual imposition was reversed where the corroborating evidence was "nonexistent." *See In re M.C.L.* at ¶ 40 (explaining that the alleged survivor "denied there was an incident where appellant touched her breast, and all other witnesses testified that the touching was consensual and invited."). Nor does *In re D.L.* help Mitchell, a case where the

record was bereft of anything "that would enable a trier of fact to reasonably conclude that D.L. engaged in sexual conduct with K.M. without her consent." *See In re D.L.* at ¶ 22. Instead, testimony from the alleged survivor and defendant established that the sexual conduct was consensual. *Id.* at ¶ 24. Finally, C.L.'s testimony is distinguishable from that in *In re Z.B.*, where the alleged survivor's testimony was inconsistent and self-contradictory. *See In re Z.B.* at ¶ 20, 22-23.

{¶19}  In this case, the trial court found C.L. credible. So do we. The evidence in the record corroborates C.L.'s testimony. Harrington's testimony explains any inconsistencies. This is not an "exceptional case in which the evidence weighs heavily against the conviction." *State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 80, quoting *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

### III. Conclusion

{¶20}  The rape survivor's testimony, testimony from the SANE nurse and police officers, the SANE report, and the DNA evidence presented by the state sufficiently supported Mitchell's conviction for rape under R.C. 2907.02(a)(2). Despite some inconsistencies in the survivor's testimony, Mitchell's conviction for rape was supported by the weight of the evidence when evidence corroborated the survivor's testimony. Therefore, we overrule Mitchell's single assignment of error and affirm his conviction.

Judgment affirmed.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

9